IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CAMPAIGN LEGAL CENTER; AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS; MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND, INC.; LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW; and DEMOS A NETWORK FOR IDEAS AND ACTION, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> JOHN B. SCOTT, in his official capacity as Secretary of State of the State of Texas, <br><br> Defendants. | Civil Action No. 1:22-cv-92 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Campaign Legal Center ("CLC"), American Civil Liberties Union Foundation of Texas ("ACLU TX"), Mexican American Legal Defense and Educational Fund, Inc. ("MALDEF"), Lawyers' Committee for Civil Rights Under Law ("LCCRUL"), and Dēmos: A Network for Ideas and Action, Ltd. ("Dēmos") (collectively "PLAINTIFFS") file this Complaint for Declaratory and Injunctive Relief against Defendant John B. Scott, in his official capacity as the Texas Secretary of State ("DEFENDANT SCOTT"), for violation of the public disclosure provision of the National Voter Registration Act of 1993 ("NVRA"), and allege the following:

**INTRODUCTION**

1. In 2019, Texas implemented a voter purge program using outdated driver's license information that disproportionately targeted naturalized U.S. citizens for removal from the voter rolls. Individuals and organizations affected by the purge program filed three lawsuits alleging

1

violations of federal law. Texas ultimately entered into a global settlement agreement limiting its use of citizenship status information in its voter list maintenance program (the "2019 Settlement Agreement").

2. Public inspection of states' voter list maintenance activities is necessary to ensure that discriminatory practices such as Texas's 2019 voter purge program do not cancel registrations of eligible voters. Such public inspection is also mandated by the NVRA.

3. The NVRA requires states to maintain accurate and current voter rolls and ensure that any eligible applicant is registered to vote. In order to enforce compliance with these requirements, Congress included a public disclosure provision in the NVRA under which states must make available for public inspection all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official voter registration lists. 52 U.S.C. § 20507(i).

4. In August 2021, pursuant to the 2019 Settlement Agreement, Texas notified PLAINTIFFS that it was renewing its efforts to use driver's license data as a basis for removing registered voters from the voter rolls ("New Voter Purge Program").

5. In August and October 2021, PLAINTIFFS requested records pursuant to the NVRA. PLAINTIFFS directed their records requests to the Texas Secretary of State, who is responsible for maintaining a statewide voter list. PLAINTIFFS asked for records showing every individual identified under the New Voter Purge Program as a potential non-U.S. citizen based on driver's license and identification information from the Texas Department of Public of Safety ("DPS"), as well as the information upon which the Secretary of State relied to make a determination about each voter's citizenship status ("Requested Records").

6. The Secretary of State, DEFENDANT JOHN B. SCOTT, has not produced any responsive records. In October and November 2021, PLAINTIFFS provided notice to DEFENDANT SCOTT that his failure to produce the Requested Records violated the NVRA. More than ninety days have elapsed since DEFENDANT SCOTT received the first notice of his violation. More than twenty days have elapsed since DEFENDANT SCOTT received the second notice of his violation, DEFENDANT SCOTT's violations are ongoing, and the violations continue to occur within 120 days of Texas's next election for federal office.

7. Having complied with the statutory notice requirement, PLAINTIFFS bring this suit to enforce their rights under the NVRA.

## JURISDICTION AND VENUE

8. This action is brought pursuant to 52 U.S.C. § 20510(b), which provides that "[a] person who is aggrieved by a violation of [the NVRA] may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. It also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to grant the declaratory relief requested.

10. This Court has personal jurisdiction over DEFENDANT SCOTT in his official capacity because he is a citizen and elected officer of the State of Texas, and his principal place of business is in Texas.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) because DEFENDANT SCOTT resides in this judicial district and a substantial part of the events and omissions alleged occurred in this district.

12. An actual and justiciable controversy exists between PLAINTIFFS and DEFENDANT SCOTT.

## PARTIES

A. **Plaintiffs**

13. ***Campaign Legal Center.*** PLAINTIFF CAMPAIGN LEGAL CENTER ("CLC") is a nonpartisan, nonprofit legal organization that works to strengthen American democracy at all levels of government. Among other activities, CLC engages in local, state, and federal actions to ensure the political process is accessible to all citizens, resulting in a representative, responsive, and accountable government. As part of these activities, CLC conducts research, publishes reports and articles, and regularly provides expert analysis to the media. CLC is also involved in litigation throughout the country regarding voting rights matters, campaign finance, redistricting, and electoral ethics. To support these efforts and to educate the public, CLC regularly seeks information under the NVRA regarding state voter registration practices.

14. ***American Civil Liberties Union Foundation of Texas.*** PLAINTIFF AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS ("ACLU TX") is a nonprofit organization committed to protecting and advancing civil rights and liberties, including the right to vote. ACLU TX monitors, reports on, educates in regard to, organizes members and volunteers in furtherance of, and engages in dialogues with stakeholders regarding voting rights, accessibility, and equity.

15. ***Mexican American Legal Defense and Educational Fund, Inc.*** MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND, INC. ("MALDEF") is a nonpartisan, nonprofit legal organization. Founded in San Antonio, Texas in 1968, MALDEF is the nation's leading Latino legal civil rights organization with headquarters in Los Angeles,

4

California, and offices throughout the United States. In furtherance of its mission to protect and defend the rights of all Latinos living in the United States, and the constitutional rights of all Americans, MALDEF conducts litigation and advocacy in the areas of voting rights, employment, education, and immigrants' rights. MALDEF has successfully litigated cases enforcing the National Voter Registration Act, including *Arizona v. ITCA*, 570 U.S. 1 (2013).

16. ***Lawyers' Committee for Civil Rights Under Law.*** PLAINTIFF LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW ("LCCRUL") is a nonpartisan, nonprofit organization, that has been at the forefront of the legal struggle to protect and defend the right to vote, and to ensure that the right is afforded equally to all. Through coordinated and integrated programs of litigation, voter protection, advocacy and education, the Lawyers' Committee's Voting Rights Project has had a tremendous positive impact on communities of color, low-income communities, youth, people with disabilities and other traditionally disenfranchised populations. Using Section 2 of the 1965 Voting Rights Act, the National Voter Registration Act of 1993, the 14th and 15th Amendments to the U.S. Constitution, and various state laws protecting the right to vote, the Voting Rights Project litigates matters related to voting rights and redistricting. The Voting Rights Project regularly files records requests under the NVRA and uses the data gathered to conduct research and publish reports, articles, and media analyses.

17. ***Dēmos: A Network for Ideas and Action, Ltd.*** PLAINTIFF DĒMOS: A NETWORK FOR IDEAS AND ACTION, LTD. ("Dēmos") is a nonprofit, nonpartisan organization. Since 2000, Dēmos has worked to create a just, inclusive multiracial America through a unique combination of research, advocacy, litigation, multi-platform communications, and deep partnerships with grassroots organizations from across the country. Dēmos—which

means "the people"—is the root word of democracy. Our name reminds us that America's power is derived from the diversity of its people.

### B. Defendant

18. DEFENDANT JOHN B. SCOTT is the Secretary of State of Texas and is sued in his official capacity. DEFENDANT SCOTT is the chief election official of the State of Texas, Tex. Elec. Code § 31.001(a), and is responsible for "implement[ing] and maintain[ing] a statewide computerized voter registration list that serves as the single system for storing and managing the official list of registered voters in the state," Tex. Elec. Code § 18.061(a). DEFENDANT SCOTT is also responsible for receiving data from the Texas Department of Public Safety and comparing it against the statewide voter registration database to "verify the accuracy of citizenship status information previously provided on voter registration applications," Tex. Elec. Code § 16.0332(a-1), and for providing information to county registrars about the citizenship status of registered voters. DEFENDANT SCOTT initiated the New Voter Purge Program.

## FEDERAL STATUTORY BACKGROUND

19. The U.S. Congress enacted the NVRA in 1993 to "increase the number of eligible citizens who register to vote," "enhance[] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). In enacting the NVRA, Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

20. To further its stated goals, the NVRA imposes on states multiple requirements with respect to voter registration to "ensure that any eligible applicant is registered to vote." 52 U.S.C. § 20507.

21. Accurate and complete voter rolls are necessary to guarantee that eligible voters are properly registered. As part of the NVRA's overall goal of ensuring that states keep accurate and complete voter rolls, the NVRA imposes strict transparency requirements. In particular, it requires:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) ("Public Disclosure Provision").

22. The Public Disclosure Provision enables the public to monitor states' compliance with the NVRA's requirements and furthers the NVRA's purpose of ensuring effective, accurate, and non-discriminatory voter registration practices.

## STATEMENT OF FACTS

### A. Texas's Citizenship Verification Process

23. In January 2019 the Texas Secretary of State's office issued Election Advisory 2019-02 ("Advisory") announcing a new voter purge program. The Advisory informed county election officials that the Secretary of State had worked with DPS to identify registered voters who had provided DPS with documentation showing that the person was not a citizen of the United States during the process of obtaining a driver's license or identification card.

24. The Secretary of State informed county election officials that he would provide them with "matches" obtained through this process and directed those officials to send the identified voters notice letters requiring them to submit documentary proof of citizenship to maintain their registration.

25. The Advisory further directed county election officials to cancel the voter registration of any individual who did not provide documentary proof of U.S. citizenship within thirty (30) days, or for whom the notice letter was returned undeliverable.

26. This process was fatally flawed. It relied on records submitted to DPS at the time an individual obtained his or her state-issued driver's license or personal identification card. DPS issues Texas driver's licenses that are valid for up to eight years and Texas personal identification cards that are valid for up to six years. That stale data often did not reflect the current citizenship status of individuals on the voter rolls. In Fiscal Year 2019 alone, over 97,000 individuals became naturalized U.S. citizens in Texas. Many registered to vote and also possessed state-issued driver's licenses or personal identification cards issued to them when they were lawful permanent residents.

27. Texas's citizenship verification process therefore not only flagged tens of thousands of eligible voters for removal from the voter rolls, it did so in a discriminatory fashion. As one Florida district court explained of a similar program in that state, while it was not reasonably designed to identify noncitizen voters, it was remarkably well crafted to identify and penalize newly naturalized citizens who choose to exercise their right to vote. *See United States v. Florida*, 870 F. Supp. 2d 1346, 1347-48 (N.D. Fla. 2012).

28. Affected voters and civic engagement organizations brought suit in 2019 challenging Texas's citizenship verification process. The court described the program as one where "perfectly legal naturalized Americans were burdened with . . . ham-handed and threatening

correspondence from the state" while "[n]o native born Americans were subjected to such treatment." *Texas LULAC v. Whitley*, No. SA-19-CA-074-FB, ECF 61 at 1-2 (Feb. 27, 2019).

29. On April 26, 2019, the Texas Secretary of State entered into the 2019 Settlement Agreement substantially limiting the State's ability to use DPS citizenship data in performing list-maintenance activities.

30. The 2019 Settlement Agreement stated that the Secretary of State would identify only currently registered voters who registered to vote *before* they presented documents to DPS indicating non-U.S. citizenship. The 2019 Settlement Agreement further provided that the Secretary would send to county voter registrars and election administrators *only* the records of voters whose effective date of voter registration is prior to, or no more than 30 calendar days after, the issuance date of the voter's current driver's license or personal identification card for which he or she proved lawful presence but not U.S. citizenship.

31. This part of the settlement was later codified by the Texas Legislature. Tex. Elec. Code § 16.0332(a-1) ("In comparing information under this subsection, the secretary of state shall consider only a voter's information in the database of the Department of Public Safety that was derived from documents presented by the voter to the department after the person's current voter registration became effective, and may not consider information derived from documents presented by the voter to the department before the person's current voter registration became effective.").

32. At the initiation of the New Voter Purge Program and pursuant to paragraph 14 of the 2019 Settlement Agreement, the Texas Attorney General sent PLAINTIFFS a letter on August 20, 2021, stating that DEFENDANT SCOTT intended to send information identifying 11,197

registered voters as potential non-U.S. citizens to county voter registrars and elections administrators.

33. DEFENDANT SCOTT purportedly identified these 11,197 registered voters as potential non-U.S. citizens based on data from DPS.

34. According to public statements from the Secretary of State's office, as of January 14, 2022, pursuant to the New Voter Purge Program, 2,327 of the over 11,000 registered voters flagged as potential non-U.S. citizens have had their voter registrations canceled. However, the Secretary of State confirmed only 278 voters as non-U.S. citizens.[1]

B. **Plaintiffs' Requests for Records Pursuant to the NVRA**

   i. **Plaintiffs' August 27 Request**

35. On August 27, 2021, pursuant to the NVRA, 52 U.S.C. § 20507(i)(1), and to determine whether Texas's New Voter Purge Program is properly maintaining registration for all eligible applicants and complying with the terms of the 2019 Settlement Agreement, several of the plaintiff organizations sent a letter via email and United States Postal Service to DEFENDANT SCOTT requesting documents concerning the State's efforts to ensure the accuracy and currency of its voter registration rolls ("August 27 Request"). The request specifically and solely sought:

> The list of all 11,197 registrants [the Secretary of State's] office identified as potential non-U.S. citizens, including the date each individual registered to vote, the effective date of each individual's voter registration; the date each individual provided documentation to DPS; the issuance date of each individual's current driver's license or personal identification; the documents provided to DPS showing proof of lawful presence but not U.S. citizenship; and the voting history of each of these individuals.

---

[1] Acacia Coronado, Paul Weber, and Nicholas Riccardi, *New Texas Voting Law Snags US Citizens, Mail Ballot Requests*, AP NEWS (Jan. 14, 2022), https://apnews.com/article/voting-rights-austin-texas-voting-legislature-f6bca0efd177745538e0c08aca796fb0.

10

36. On September 14, 2021, DEFENDANT SCOTT responded ("September 14 Letter") and stated that he would treat the August 27 Request as a request for information under the Texas Public Information Act, Chapter 552 of the Texas Government Code (the "PIA"), citing Tex. Att'y Gen. Open Records Letter No. 2004-4095 at 2 (May 18, 2004), Tex. Att'y Gen. Open Records Letter No. 2019-18243 at 2 (July 2, 2019), and Tex. Gov't Code §§ 552.002, 552.003.

37. On October 20, 2021, PLAINTIFFS provided DEFENDANT SCOTT notice via email and United States Postal Service and pursuant to 52 U.S.C. § 20510(b) ("October 20 NVRA Notice Letter") that withholding the requested documents pursuant to Texas state law violated 52 U.S.C. § 20507(i)(1), and that if the violation was not corrected within 90 days, PLAINTIFFS were entitled to file suit in federal court to obtain the requested documents.

38. In their October 20 NVRA Notice Letter, PLAINTIFFS reiterated that the request was pursuant to federal law, not state law. PLAINTIFFS explained that the NVRA requires DEFENDANT SCOTT to produce "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," citing 52 U.S.C. § 20507(i)(1). PLAINTIFFS further explained that the NVRA does not permit DEFENDANT SCOTT to withhold documents from public scrutiny on the basis of exceptions to a Texas statute not invoked in the request.

39. On November 3, 2021, DEFENDANT SCOTT replied ("November 3 Letter") and reiterated his intent to treat PLAINTIFFS' August 27 Request as one made under the Texas PIA. DEFENDANT SCOTT asserted that the Requested Records were protected from disclosure under Chapter 552 of the Texas Government Code and indicated his intention to seek a decision from the Texas Attorney General as to whether to withhold the Requested Records.

40.     DEFENDANT SCOTT has failed to produce any of the Requested Records in response to PLAINTIFFS' August 27 Request, in violation of the NVRA.

    **ii.     Plaintiffs' October 20 Request**

41.     On September 14, 2021, DEFENDANT SCOTT sent a second letter to PLAINTIFFS, pursuant to the 2019 Settlement Agreement, stating that DEFENDANT SCOTT had begun sending data identifying registered voters as potential non-U.S. citizens to county voter registrars and elections administrators on a weekly basis, and that in the first three weeks of this program DEFENDANT SCOTT had identified an additional 49 registered voters as potential non-U.S. citizens.

42.     Pursuant to the NVRA, 52 U.S.C. § 20507(i)(1), PLAINTIFFS sent a new records request letter via email and United States Postal Service to DEFENDANT SCOTT on October 20, 2021 ("October 20 Request") seeking the list of the additional 49 registrants the Secretary of State's office identified as potential non-U.S. citizens, including:

> The date each individual registered to vote, the effective date of each individual's voter registration; the date each individual provided documentation to DPS; the issuance date of each individual's current driver's license or personal identification; the documents provided to DPS showing proof of lawful presence but not U.S. citizenship; and the voting history of each of these individuals.

43.     On November 3, 2021, DEFENDANT SCOTT responded that he would treat the October 20 Request as a request for information made under Texas's PIA.

44.     On November 15, 2021, PLAINTIFFS replied via email and United States Postal Service and gave notice pursuant to 52 U.S.C. § 20510(b) ("November 15 NVRA Notice Letter") that withholding documents sought in the October 20 Request violated 52 U.S.C. § 20507(i)(1), and that if the violation was not corrected within 90 days, PLAINTIFFS were entitled to file suit in federal court to obtain the requested documents.

45. The NVRA requires states to correct NVRA violations "within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office." 52 U.S.C. § 20510(b)(2).

46. Texas will hold its partisan primary elections for U.S. Representatives on March 1, 2022. DEFENDANT SCOTT's NVRA violation is ongoing. More than 20 days have elapsed since PLAINTIFFS gave notice of this violation.

47. DEFENDANT SCOTT has failed to produce any of the Requested Records in response to PLAINTIFFS' October 20 Request, in violation of the NVRA.

C. **Plaintiffs are Entitled to Sue for Relief from Defendant's NVRA Violations**

48. Pursuant to the NVRA's Public Disclosure Provision, the State must maintain such "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" for a minimum of two years. 52 U.S.C. § 20507(i)(1). The State must also make the records available for public inspection. *Id*.

49. PLAINTIFFS have requested records concerning DEFENDANT SCOTT's implementation of programs and activities for identifying registered voters who are ineligible to vote because they are not U.S. citizens.

50. DEFENDANT SCOTT's refusal to make the Requested Records available to PLAINTIFFS violates the NVRA's Public Disclosure Provision. DEFENDANT SCOTT's refusal prevents PLAINTIFFS from monitoring Texas's compliance with the NVRA and frustrates the NVRA's stated purpose of ensuring effective, accurate, and non-discriminatory voter registration practices.

51. As outlined above and in compliance with Section 11(b) of the NVRA, PLAINTIFFS notified DEFENDANT SCOTT on October 20, 2021 that his refusal to produce the

Requested Records in response to PLAINTIFFS' August 27 Request violated the NVRA. PLAINTIFFS further notified DEFENDANT SCOTT on November 15, 2021 that his refusal to produce the Requested Records in response to PLAINTIFFS' October 20 Request violated the NVRA.

52. More than 90 days have elapsed since PLAINTIFFS provided DEFENDANT SCOTT written notice of the violation with respect to the August 27 Request.

53. More than 20 days have elapsed since PLAINTIFFS provided DEFENDANT SCOTT written notice of the violation with respect to the October 20 Request. That violation is ongoing and within 120 days of Texas's upcoming elections for federal office.

54. To date, DEFENDANT SCOTT has not produced any records in response to PLAINTIFFS' August 27 Request or PLAINTIFFS' October 20 Request.

55. DEFENDANT SCOTT has therefore failed to correct the NVRA violations identified in PLAINTIFFS' October 20 NVRA Notice Letter and PLAINTIFFS' November 15 NVRA Notice Letter. 52 U.S.C. § 20510(b)(2).

## CAUSE OF ACTION

**Violation of the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.***
**(All Plaintiffs against Defendant Scott)**

56. PLAINTIFFS re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

57. The information sought in the August 27 Request and the October 20 Request is within the possession, custody, and control of DEFENDANT SCOTT.

58. The NVRA's Public Disclosure Provision requires that "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and

currency of official lists of eligible voters," such as those requested by PLAINTIFFS, be made available to the public for inspection and, where available, copying. 52 U.S.C. § 20507(i)(1).

59. PLAINTIFFS complied with the NVRA's notice requirement by providing DEFENDANT SCOTT written notice of the violation, but he has failed to correct the violation within the notice period set forth in Section 11(b) of the NVRA.

60. DEFENDANT SCOTT has violated, and continues to violate, the NVRA by refusing to make the Requested Records available for inspection within the meaning of the statute.

## REQUEST FOR RELIEF

WHEREFORE, PLAINTIFFS respectfully request that the Court enter judgment in their favor and:

A.  Declare that DEFENDANT SCOTT is in violation of the NVRA by refusing to make the Requested Records (as described herein) available for inspection and copying;

B.  Order DEFENDANT SCOTT to provide PLAINTIFFS with electronic copies of the Requested Records within ten (10) days of the Court's judgment in favor of PLAINTIFFS;

C.  Retain jurisdiction over this matter to ensure DEFENDANT SCOTT's compliance with his obligations to produce the Requested Records pursuant to the Court's Order and the NVRA;

D.  Award PLAINTIFFS their reasonable costs and attorneys' fees incurred in bringing this suit pursuant to 52 U.S.C. § 20510(c); and

E.  Grant any and all other relief this Court deems just and proper.

This the 1st day of February, 2022.

Respectfully submitted,

By: */s/ Nina Perales*
Nina Perales (TX Bar No. 24005046)
Fatima Menendez (TX Bar No. 24090260)

MEXICAN AMERICAN LEGAL DEFENSE
   AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
T: (210) 224-5476
F: (210) 224-5382
nperales@MALDEF.org
fmenendez@MALDEF.org

Rosa Saavedra Vanacore*
MEXICAN AMERICAN LEGAL DEFENSE
   AND EDUCATIONAL FUND
1016 16th Street, NW, Suite 100
Washington, DC 20036
T: (202) 293-2828
F: (202) 293-2849
rsaavedra@MALDEF.org
*Motion for pro hac vice forthcoming

*Counsel for Plaintiff Mexican American Legal Defense and Educational Fund, Inc.*

By: */s/ Thomas Buser-Clancy*
Thomas Buser-Clancy (TX Bar No. 24078344)
Andre Segura (TX Bar No. 24107112)
Ashley Harris (TX Bar No. 24123238)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF TEXAS
5225 Katy Freeway, Suite 350
Houston, TX 77007
T: (713) 942-8146
F: (915) 642-6752
tbuser-clancy@aclutx.org
asegura@aclutx.org
aharris@aclutx.org

*Counsel for Plaintiff American Civil Liberties Union Foundation of Texas*

By: */s/ Chad W. Dunn*
Chad W. Dunn (TX Bar No. 24036507)
BRAZIL & DUNN, LLP
4407 Bee Caves Road, Suite 111
Austin, TX 78746
T: (512) 717-9822
F: (512) 515-9355
chad@brazilanddunn.com

Danielle Lang*
Alice Huling *
Molly Danahy*
Caleb Jackson*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
T: (202) 736-2200
dlang@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org
cjackson@campaignlegalcenter.org
*Motions for pro hac vice forthcoming

*Counsel for Plaintiff Campaign Legal Center*

By: */s/ Lindsey B. Cohan*
Lindsey B. Cohan (TX Bar No. 24083903)
DECHERT LLP
515 Congress Ave., Suite 1400
Austin, TX 78701
T: (512) 394-3000
lindsey.cohan@dechert.com

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
T: (212) 698-3822
neil.steiner@dechert.com
\**Motion for pro hac vice forthcoming*

*Counsel for Plaintiffs Lawyers' Committee for Civil Rights Under Law and Dēmos: A Network for Ideas and Action, Ltd.*


Ezra Rosenberg*
Pooja Chaudhuri*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
\**Motions for pro hac vice forthcoming*

*Counsel for Plaintiff Lawyers' Committee for Civil Rights Under Law*

Brenda Wright*
DĒMOS: A NETWORK FOR IDEAS AND ACTION, LTD.
80 Broad Street, 4th Floor
New York, NY 10004
bwright@demos.org
\**Motion for pro hac vice forthcoming*

*Counsel for Plaintiff Dēmos: A Network for Ideas and Action, Ltd.*