**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| CAMPAIGN LEGAL CENTER;<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF TEXAS; MEXICAN<br>AMERICAN LEGAL DEFENSE AND<br>EDUCATIONAL FUND, INC.; LAWYERS'<br>COMMITTEE FOR CIVIL RIGHTS<br>UNDER LAW; and DEMOS A NETWORK<br>FOR IDEAS AND ACTION, LTD.,<br><br>          Plaintiffs,<br><br>   v.<br><br>JOHN B. SCOTT, in his official capacity as<br>Secretary of State of the State of Texas,<br><br>          Defendant. | Civil Action No. 1:22-cv-92 |

**PLAINTIFFS' RULE 65 MOTION FOR PRELIMINARY INJUNCTION
AND TO CONSOLIDATE PRELIMINARY INJUNCTION HEARING WITH TRIAL ON
THE MERITS**

## INTRODUCTION

In August 2021, the Texas Secretary of State notified Plaintiffs that he was restarting a program of purging registered voters based on data from the Texas Department of Public Safety ("DPS") indicating non-U.S. citizenship ("New Voter Purge Program"). In 2019, the Secretary settled several lawsuits alleging that a prior version of this purge program, which relied on stale data from DPS, unlawfully discriminated against newly naturalized U.S. citizens. *Texas League of United Latin American Citizens et al v. Whitley et al*, No. SA-19-CA-074-FB, ECF 150, 152 (W.D. Tex. 2019). The New Voter Purge Program purports to comply with the settlement agreement in the 2019 case by relying only on documents indicating non-U.S. citizenship that were provided to DPS *after* a person registered to vote. However, initial reports of the New Voter Purge Program's results indicate that naturalized U.S. citizens are still routinely swept into this program, casting doubt on the Secretary's compliance with the 2019 settlement.

To assess the Secretary's compliance with the settlement and protect eligible voters, Plaintiffs promptly sought records related to Texas's New Voter Purge Program under the National Voter Registration Act ("NVRA"), which requires public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). But Defendant Scott[1] has refused to produce the relevant records, in blatant violation of his obligations under federal law. Defendant Scott has not attempted to justify his actions under federal law, but instead has repeatedly invoked state law to avoid disclosure. Any state law blocking disclosure of these records is preempted by the NVRA.

---

[1] Defendant John B. Scott ("Defendant Scott" or "Defendant"), who is sued in his official capacity, was appointed to serve as the Texas Secretary of State on October 21, 2021.

Absent action by this Court, the public will continue to be left in the dark with respect to Texas's process for implementing its New Voter Purge Program. Particularly in an election year, access to this information on a timely basis is paramount to protecting eligible voters. Plaintiffs respectfully request that the Court issue a preliminary injunction ordering Defendant Scott to comply with federal law requiring him to provide for public inspection of records related to Texas's New Voter Purge Program. Since this lawsuit presents undisputed facts and straightforward legal questions, Plaintiffs further request that the Court advance the trial on the merits and consolidate it with the preliminary injunction hearing pursuant to Rule 65(a)(2).

## LEGAL BACKGROUND

Congress enacted the NVRA in 1993 to "increase the number of eligible citizens who register to vote," "enhance[] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). In enacting the NVRA, Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

Accurate and current voter rolls are integral to guaranteeing that eligible voters are properly registered. As part of the NVRA's overall goal of ensuring that states properly maintain their voter rolls, the NVRA includes the following "Public Disclosure Provision":

(1)     Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1). The Public Disclosure Provision enables the public to monitor states' compliance with the NVRA's requirements and furthers the NVRA's purpose of ensuring effective, accurate, and non-discriminatory voter registration practices.

A person "aggrieved" by a violation of the NVRA must provide notice of the violation to the chief election officer of the relevant state prior to filing suit. 52 U.S.C. § 20510(b)(1). If the violation is not corrected within 90 days, or within 20 days if the violation occurred within 120 days before a federal election, the aggrieved person may file suit for declaratory or injunctive relief in federal court. *Id.* § 20510(b)(2).

## FACTUAL BACKGROUND

Texas has a history of implementing discriminatory voter roll maintenance programs.[2] In 2019, the Texas Secretary of State's office implemented a voter purge program that knowingly targeted newly naturalized U.S. citizens for removal from the voting rolls. It did so by relying on documentation related to citizenship status that these voters provided to the Department of Public Safety ("DPS") *prior* to becoming U.S. citizens and registering to vote. Several federal lawsuits challenged the program, and Texas entered into a settlement agreement ("2019 Settlement Agreement") limiting its use of citizenship data from DPS. *Texas LULAC v. Whitley*, No. SA-19-CA-074-FB, ECF 150, 152 (W.D. Tex. 2019). In August 2021, Texas restarted its purge program based on DPS records related to citizenship, but purportedly in compliance with the 2019 Settlement Agreement. Plaintiffs have sought records to confirm this compliance, ensure transparency, and protect naturalized citizen voters from discrimination. Defendant Scott has refused to provide such records.

---

[2] The Fifth Circuit has recognized that Texas's history of racially discriminatory voter purges stretches back to "as late as 1975." *Veasey v. Abbott*, 830 F.3d 216, 240 (5th Cir. 2016).

## I.     Texas's 2019 Voter Purge Program

In January 2019, the Texas Secretary of State's office issued Election Advisory 2019-02 ("Advisory") announcing a fatally flawed voter purge program that targeted naturalized U.S. citizens ("2019 Voter Purge Program"). *See* Election Advisory No. 2019-02 (Ex. A). The program entailed matching the statewide voter registration database against DPS records to identify registered voters who had, at any time in the past, provided the Department of Public Safety ("DPS") with documentation showing that the person was not a citizen of the United States. *Id.* The Secretary of State then directed county election officials to send every identified voter a notice letter requiring them to submit documentary proof of citizenship to prevent being purged from the voter rolls. *Id.* County election officials were also directed to cancel the voter registration of any individual who did not provide documentary proof of U.S. citizenship within thirty (30) days, or for whom the notice letter was returned undeliverable. *Id.*

This process was fatally flawed because it relied on stale data. DPS records contain information related to a person's citizenship status at the time they obtain a state-issued driver's license or identification card. *See Texas LULAC v. Whitley*, No. SA-19-CA-074-FB, ECF 61 at 2 (W.D. Tex. Feb. 27, 2019); *see also*, Liam Stack, *Texas Ends Review That Questioned Citizenship of Almost 100,000 Voters*, N.Y. Times, https://www.nytimes.com/2019/04/26/us/texas-voting.html (Apr. 26, 2019). As such, the matching program, which captured tens of thousands of naturalized U.S. citizens who had obtained a driver's license or identification card prior to naturalization and later registered to vote after becoming a U.S. citizen, imposed additional

burdens on newly naturalized voters that were not required of native-born U.S. citizens and targeted them for removal from the voter registration rolls. *Id.*[3]

In 2019, affected Texans—all of whom were targeted naturalized citizens who were eligible to vote—and civic engagement organizations brought suit to challenge the 2019 Voter Purge Program, which the district court described as burdening naturalized citizens with "ham-handed and threatening correspondence from the state" while "[n]o native born Americans were subjected to such treatment." *Texas LULAC v. Whitley*, No. SA-19-CA-074-FB, ECF 61 at 1-2 (W.D. Tex. Feb. 27, 2019). The state defendants in that case, including the Texas Secretary of State, ultimately entered into the global 2019 Settlement Agreement ending the 2019 Voter Purge Program and limiting Texas's future use of DPS citizenship data in its voter roll maintenance efforts. *See* Settlement Agreement, *Texas LULAC v. Whitley* (W.D. Tex. Apr. 26, 2019) (Ex. B).

Under the 2019 Settlement Agreement, the Texas Secretary of State is only allowed to rely on DPS records to initiate a removal process where a person provided documentation showing non-U.S. citizenship *after* registering to vote. Specifically, the Secretary of State is only allowed to send records to county election officials for investigation and removal based on non-U.S. citizenship status where the voter's effective date of voter registration is prior to, or no more than 30 calendar days after, the issuance date of the voter's current driver's license or personal identification card for which he or she presented documentation of lawful presence but not U.S. citizenship. *See* Ex. B (codified at Tex. Elec. Code § 16.0332(a-1)).

---

[3] A Texas driver's license or state-issued identification card is valid for up to eight years. Texas Dep't of Pub. Safety, Driver License, https://www.dps.texas.gov/section/driver-license (last visited February 25, 2021). In Fiscal Year 2019 alone, over 97,000 individuals became naturalized U.S. citizens in Texas. *See* U.S. Dep't of Homeland Sec., Profiles on Naturalized Citizens: 2019 State, https://www.dhs.gov/profiles-naturalized-citizens-2019-state.

## II.        2021 Voter Purge Program

In August 2021, pursuant to the 2019 Settlement Agreement's requirements, counsel for Defendant Scott notified Plaintiffs that the Secretary of State was restarting the program of purging registered voters based on DPS data indicating non-U.S. citizenship. *See* Letter from Attorney General's Office to Counsel regarding New Superset Data (Aug. 20, 2021) (Ex. C). Defendant Scott asserted that the new program complied with the 2019 Settlement Agreement, and informed Plaintiffs that Defendant Scott intended to send information purportedly identifying 11,197 registered voters as potential non-U.S. citizens to county voter registrars and elections administrators for investigation and potential removal from the voter rolls. *Id*. Under the 2019 Settlement Agreement, Defendant Scott was permitted to match already existing DPS data against the voter registration database to identify all registered individuals who allegedly presented documents to DPS indicating non-citizenship *after* registering to vote (referred to as the "superset"). *See* Ex. B. Thereafter, the 2019 Settlement Agreement permits Defendant to update these data on a weekly basis ("weekly updates"). These 11,197 registered voters constitute the initial "superset" of voters identified under the New Voter Purge Program.

On September 14, 2021, Defendant Scott informed Plaintiffs that the Secretary of State's office had begun matching DPS data against the voter registration rolls on a weekly basis and intended to begin notifying county election officials of registered voters identified as potential non-U.S. citizens through this process, also on a weekly basis, moving forward. *See* Letter from Attorney General's Office to Counsel regarding Weekly Superset Data (Sept. 14, 2021) (Ex. D). Defendant Scott also informed Plaintiffs that he had identified just 49 potential non-U.S. citizens in the 20,480 records provided by DPS during the first three weeks of weekly updates. *See id*. Under the 2019 Settlement Agreement, Defendant Scott was required to notify Plaintiffs of the

number of voter records identified by the weekly updates for the first three batches of such data. *See* Ex. B.

As of January 14, 2022, only 278 of the over 11,000 voters flagged under the New Voter Purge Program had been confirmed to be non-U.S. citizens (less than 2.5%), but over 2,000 voters had their voter registrations cancelled.[4] Def. Answer at ¶ 34. Defendant Scott has not provided any meaningful public information with respect to the status of the approximately 9,000 remaining registered voters flagged by the New Voter Purge Program. There is evidence that the New Voter Purge Program continues to flag eligible voters as potential non-U.S. citizens.[5] For example, in Tarrant County, of the 675 registered voters flagged by the New Voter Purge Program as potential non-U.S. citizens, at least 119 have already been confirmed to be eligible voters. *See* Tarrant County DPS Proof of Citizenship List (Ex. E). In Travis County, at least 93 of the 385 registered voters flagged by the New Voter Purge Program have been confirmed to be U.S. citizens and it appears that Collin County has confirmed U.S. citizenship for at least 88 of its 302 flagged voters. *See* Travis County DPS Proof of Citizenship List (Ex. F) and Collin County DPS Proof of Citizenship List (Ex. G).

## III.    Plaintiffs' National Voter Registration Act Record Requests

Defendant Scott is the Secretary of State of Texas and the chief election officer for the state of Texas. Tex. Elec. Code § 31.001(a); *see also* 52 U.S.C. § 20510(b)(1). He is responsible for "implement[ing] and maintain[ing] a statewide computerized voter registration list that serves as the single system for storing and managing the official list of registered voters in the state." Tex.

---

[4] Alexa Ura, *Texas' renewed voter citizenship review is still flagging citizens as "possible non-U.S. citizens"*, TEX. TRIB. (Dec. 17, 2021), https://www.texastribune.org/2021/12/17/texas-voter-roll-review/.

[5] *See* Ura, *supra* note 3.

Elec. Code § 18.061(a). He is also responsible for receiving data from the Texas Department of Public Safety and comparing it against the statewide voter registration database to "verify the accuracy of citizenship status information previously provided on voter registration applications," and for providing such information to county registrars. Tex. Elec. Code § 16.0332(a-1).

On August 27, 2021, several of the Plaintiff Organizations and other organizations submitted a request to Defendant Scott under the NVRA's Public Disclosure Provision seeking the list of voters targeted by the New Voter Purge Program ("August 27 Request"). *See* Demand for Documents Pursuant to National Voter Registration Act (Aug. 27, 2021) (Ex. H). The request specifically sought:

> The list of all 11,197 registrants [the Secretary of State's] office identified as potential non-U.S. citizens, including the date each individual registered to vote, the effective date of each individual's voter registration; the date each individual provided documentation to DPS; the issuance date of each individual's current driver's license or personal identification; the documents provided to DPS showing proof of lawful presence but not U.S. citizenship; and the voting history of each of these individuals.

*Id*. Plaintiffs sought these documents to aid them in determining whether Texas's New Voter Purge Program continues to discriminate against newly naturalized citizens, despite purportedly complying with the 2019 Settlement Agreement. *Id.* Plaintiffs further sought these documents to ensure that eligible naturalized voters remain on the voter rolls.

On September 14, 2021, Defendant Scott refused to produce the requested documents on the grounds that any responsive documents are allegedly exempt from disclosure under the Texas Public Information Act ("PIA"). *See* Response Letter from Sec'y of State to Campaign Legal Center (Sept. 14, 2021) (Ex. I).

On October 20, 2021, Plaintiffs notified Defendant Scott that withholding the requested documents pursuant to Texas state law violated the NVRA's Public Disclosure Provision, 52

U.S.C. § 20507(i)(1). Plaintiffs further notified Defendant Scott that if the violation was not corrected within 90 days, Plaintiffs would be entitled to file suit in federal court to obtain the requested documents ("October 20 NVRA Notice Letter"). *See* Notice of Violation of National Voter Registration Act Public Records Requirement (Oct. 20, 2021) (Ex. J).

On October 20, 2021, Plaintiffs sent a second NVRA request to Defendant Scott ("October 20 Request") (collectively with the August 27 Request, the "Record Requests") seeking the list of the 49 registrants the Secretary of State's office identified as potential non-U.S. citizens through the first three weeks of the weekly updates, including:

> The date each individual registered to vote, the effective date of each individual's voter registration; the date each individual provided documentation to DPS; the issuance date of each individual's current driver's license or personal identification; the documents provided to DPS showing proof of lawful presence but not U.S. citizenship; and the voting history of each of these individuals.

*See* Demand for Documents Pursuant to National Voter Registration Act (Oct. 20, 2021) (Ex. K).

Defendant Scott again refused to produce the requested documents (collectively, the "Requested Records") on the grounds that they are allegedly exempt from disclosure under state law. *See* Response Letter from Sec'y of State to Campaign Legal Center (Nov. 3, 2021) (Ex. L) (applying Tex. Gov't Code §§ 552.101–552.162 and §§ 552.221–552.235). On November 15, 2021, Plaintiffs notified Defendant that withholding the documents sought in the October 20 Request violated the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i)(1), and that if the violation was not corrected within 90 days, Plaintiffs were entitled to file suit in federal court to obtain the requested documents. *See* Notice of Violation of National Voter Registration Act Public Records Requirement (Nov. 15, 2021) (Ex. M).

To date, Defendant Scott has not produced any of the Requested Records in violation of the NVRA's Public Disclosure Provision. Def. Answer at ¶ 6.

## LEGAL STANDARD

To obtain a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) that the threatened injury to the plaintiff outweighs whatever damage the injunction may cause to the defendant; and (4) the injunction is not adverse to the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Planned Parenthood v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).

Under Federal Rule of Civil Procedure 65(a)(2), the "District Judge has broad discretion to advance the merits in order to consolidate them with the hearing on the motion for a preliminary injunction." *Dillon v. Bay City Constr. Co.*, 512 F.2d 801, 804 (5th Cir. 1975).  If the Court intends to do so, it must provide "clear and unambiguous notice" to the parties and "a full opportunity to present their respective cases." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## ARGUMENT

### I.     Plaintiffs Are Likely to Succeed on Their National Voter Registration Act Claim Against Defendant Scott.

Plaintiffs are substantially likely to succeed in this matter because the NVRA requires Defendant Scott to permit public inspection of the records identified in Plaintiffs' Record Requests. The NVRA requires states to make records relating to the maintenance of their voter rolls available for public inspection. Plaintiffs' Record Requests seek records related to Texas's New Voter Purge Program, which is aimed at removing potential non-U.S. citizens from the state's voter rolls. These records fall squarely within the NVRA's public inspection requirements. Defendant Scott's refusal to fulfill Plaintiffs' Record Requests violates federal law and is not justified by his reliance on state law, which in any event must yield to the NVRA. Plaintiffs are therefore substantially likely to succeed on the merits of their claim that Defendant Scott's refusal to provide for public inspection of voter roll maintenance records violates the NVRA.

A.       **Plaintiffs' Requests Are Proper Under the NVRA.**

In enacting the NVRA, Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3). As such, Congress requires that list maintenance programs "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *Id.* § 20507(b)(1). To ensure compliance, the NVRA imposes strict transparency requirements with respect to list maintenance activities. Specifically, it mandates that:

> Each State shall maintain for at least 2 years and *shall make available for public inspection* and, where available, photocopying at a reasonable cost, *all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters*, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

Public Disclosure Provision, 52 U.S.C. § 20507(i)(1) (emphasis added).

Pursuant to § 20507(i)(1), Plaintiffs seek records related to Defendant Scott's implementation of the New Voter Purge Program, specifically lists of voters identified as potential non-U.S. citizens under the program. *See* Ex. H; Ex. K; *see also* Sec'y of State Letters to Attorney Gen. Paxton (Nov. 10, 2021) (Ex. N at 1 and Ex. O at 1) (Defendant Scott acknowledging that Plaintiffs "seek[] certain records related to the Secretary of State's voter roll maintenance efforts involving potential non-United States citizens").

These lists fit squarely within the Public Disclosure Provision. *See Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 443-45 (D. Md. 2019) (finding the NVRA's Public Disclosure Provision to pertain to a request for a state voter registration list). Indeed, the Fourth Circuit has held that records related to programs to identify non-U.S. citizens on the rolls are covered records.

11

*Public Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266 (4th Cir. 2021) (holding that "the Board's efforts in the present case to identify noncitizen registrants qualify as a 'program' or 'activity' to ensure an accurate list of eligible voters").[6] Texas's New Voter Purge Program is undeniably a "program" or "activity" conducted for the alleged purpose "of ensuring the accuracy and currency of official lists of eligible voters," and records created as a part of that program are subject to public inspection under the NVRA. 52 U.S.C. § 20507(i)(1). The NVRA's Public Disclosure Provision is "expansive." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *see also Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 WL 2206159, at *5 (N.D. Ill. June 1, 2021) ("[T]he courts that have addressed the question have uniformly reached the conclusion that the NVRA's reference to 'records' in Section 8(i) includes voter list data." (collecting cases)); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1341 (N.D. Ga. 2016) ("[I]n addition to requiring records regarding the processes a state implements to ensure the accuracy and currency of voter rolls, considering the NVRA as a consistent whole, individual applicant records are encompassed by the Section 8(i) disclosure requirements.").

Further, the Requested Records are necessary to ensure that the Secretary of State's New Voter Purge Program complies with the NVRA's substantive restrictions on removal of voters. *See, e.g.*, 52 U.S.C. § 20507(b)(1) (requiring that list maintenance programs "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act"). This is particularly important given that the previous version of the same program discriminated on the basis of national origin

---

[6] Some courts have recognized that privacy interests may allow some redactions to voter records under certain circumstances. However, Defendant has alleged that the information responsive to Plaintiffs' request is protected from disclosure "in its entirety". *See* Ex. N and Ex. O. Therefore, the issue of appropriate redactions is not ripe. Should this Court grant this preliminary injunction, Plaintiffs are willing to address privacy concerns with Defendant directly and propose any appropriate redactions to the Court.

by specifically targeting newly naturalized citizens. *See Texas LULAC v. Whitley*, No. SA-19-CA-074-FB, 2019 WL 7938511, at *1–2 (W.D. Tex. Feb. 27, 2019) (finding that the 2019 Voter Purge Program burdened naturalized citizens with "ham-handed and threatening correspondence from the state" while "[n]o native born Americans were subjected to such treatment").

Because the Requested Records fall within the broad scope of the NVRA's Public Disclosure Provision, Defendant Scott's refusal to produce the records violates the NVRA. As such, Plaintiffs are likely to succeed on their claim.

**B.      State Public Records Law Is Inapplicable and Preempted by the NVRA.**

Defendant Scott is not entitled to evade his obligations under the NVRA by improperly construing Plaintiffs' requests under state law.

First, Plaintiffs' Record Requests explicitly state that they are made pursuant to the NVRA and make no mention of state law. *See* Ex. H; Ex. K. Further, in notifying Defendant that his refusal to produce the Requested Records violated the NVRA, Plaintiffs specifically informed him that they were not invoking state law, and that the requests were made solely pursuant to the NVRA. *See* Ex. J; Ex. M. Because the Requested Records fall within the scope of the NVRA, *see supra* Part 1.A, state law does not govern their disclosure. Nonetheless, Defendant Scott's correspondence repeatedly invokes the PIA and fails to address his obligations under the NVRA. *See* Ex. I; Ex. L; Ex. N; Ex. O. Defendant's disingenuous attempt to convert Plaintiffs' clear and unambiguous NVRA request to one made under state law fails.

Second, the NVRA's requirement to produce the Requested Records preempts Defendant's attempt to invoke state law exceptions in a manner that conflicts with the NVRA. Both the Supreme Court and the Fifth Circuit have held that the NVRA preempts state law when the two

are in conflict.[7] *See Arizona v. Inter Tribal Council of Ariz., Ing.*, 570 U.S. 1, 4 (2013); *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013). In *Inter Tribal Council*, the Supreme Court considered whether the NVRA, which requires states to "accept and use" a federal voter registration form that does not require documentary proof of citizenship, preempted an Arizona law that required documentary proof of citizenship to register to vote. 570 U.S. at 4. The Court reasoned that "[w]hen Congress legislates with respect to the 'Time, Places, and Manner' of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States." *Id.* at 14 (emphasis in original). The Court held that because the NVRA's statutory basis is in the Elections Clause, Arizona's conflicting law had to "give way" to the NVRA's mandate. *Id.* at 14–15 (finding that "the power the Elections Clause confers is none other than the power to pre-empt").

Similarly, in *Voting for America*, the Fifth Circuit recognized that "[u]nder the Constitution's Election Clause, Congress may enact laws that preempt state election laws concerning federal elections." 732 F.3d at 399 (*citing Foster v. Love*, 522 U.S. 67, 69 (1997) and *Ex parte Siebold*, 100 U.S. 371, 384 (1879)). Thus, the Fifth Circuit acknowledged that if a relevant state law "conflict[ed] with the NVRA," it would "require preemption." *Id.*

As such, courts that have specifically considered the Public Disclosure Provision of the NVRA have found that it preempts conflicting state law. *See, e.g.*, *Judicial Watch*, 399 F. Supp. 3d at 443–45 (finding that a state law limiting who could request voter registration records

---

[7] Indeed, every court to have considered this question has concluded the same. *See, e.g.*, *League of Women Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714, 723 (7th Cir. 2021); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *Judicial Watch, Inc.*, 399 F. Supp. 3d 425 (D. Md. 2019); *Ill. Conservative Union*, 2021 WL 2206159, at *6–7 (N.D. Ill. June 1, 2021); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 730–31 (S.D. Miss. 2014); *Stringer v. Hughes*, No. SA-16-CV-257-OG, 2020 WL 6875182, at *23 (W.D. Tex. Aug. 28, 2020).

"obstruct[ed] the effective implementation of [the Public Disclosure Provision] and hinder[ed] the realization of the NVRA's enumerated purposes" and was therefore preempted); *Ill. Conservative Union, v. Illinois*, 2021 WL 2206159, at \*6–7 (denying defendants' motion to dismiss for failure to state a claim where plaintiffs alleged that Illinois's prohibition on photocopying voter registration records conflicted with and was preempted by the Public Disclosure Provision).

Here, Defendant Scott's invocation of the Texas PIA exceptions to withhold the Requested Records directly conflicts with the NVRA Public Disclosure Provision's requirement that Defendant Scott produce "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). A conflict between state and federal law exists "where compliance with both federal and state regulations is a physical impossibility" and "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (internal citations and quotation marks omitted). The NVRA Public Disclosure Provision must be accorded "great breadth," *Project Vote/Vote for America, Inc. v. Long*, 682 F.3d at 336 (internal quotation marks omitted), and in this particular instance, *greater* breadth than Texas's state law. Defendant Scott cannot comply with the broad disclosure requirements of the NVRA while withholding the list of voters targeted for removal under the New Voter Purge Program. Allowing him to do so would impose an unjustifiable obstacle to the Plaintiffs' ability to monitor whether the New Voter Purge Program imposes the same or similar discriminatory burdens on newly naturalized citizens as the 2019 Voter Purge Program and would frustrate Congress's intent in enacting the Public Disclosure Provision. As such, any purported state law exemption for producing the Requested Records conflicts with and is preempted by the NVRA. *See Arizona*, 567 U.S. at 399.

## II.     Plaintiffs Will Continue to Suffer Irreparable Harm Without a Preliminary Injunction.

"To satisfy the second prong of the preliminary-injunction test, Plaintiffs must show that in the absence of an injunction they are 'likely to suffer irreparable harm.'" *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 217 (W.D. Tex. 2020) (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013)). Irreparable harm refers to harm for which there is no adequate remedy at law. *Id.*

The NVRA requires transparency about Texas's New Voter Purge Program, and it is imperative that the public has the opportunity to investigate the state's procedures before lawfully registered voters continue to be removed from the voter rolls. Access to the Requested Records is necessary to exercise the oversight function intended by the NVRA's Public Disclosure Provision, which allows oversight "to protect the integrity of the electoral process," "ensure that accurate and current voter registration rolls are maintained," and ensure that list maintenance programs are uniform, nondiscriminatory, and in compliance with the Voting Rights Act. 52 U.S.C. § 20501(b); § 20507(b)(1). Without the Requested Records, Plaintiffs cannot determine whether Texas's New Voter Purge Program suffers from the same discriminatory flaws as the 2019 Voter Purge Program—namely imposing burdensome voter registration requirements on eligible naturalized U.S. citizens.[8] This inability to effectively determine whether the state is using proper procedures in its New Voter Purge Program is an irreparable injury. *See Project Vote, Inc.*, 208 F. Supp. 3d at 1350 ("There is no monetary remedy that can correct the public's lack of access to information enabling it to ensure the integrity of Georgia's voter registration process."); *Protect Democracy Project, Inc. v. United States Dep't of Justice*, 498 F. Supp. 3d 132, 142 (D.D.C. 2020) (finding

---

[8] Ura, *supra* note 3.

irreparable harm where "the American public has a need to know information regarding investigations into matters potentially affecting voting rights while the inquiries are still ongoing"); *Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2006 WL 3462659, at *5 (N.D. Cal. Nov. 29, 2006) (finding irreparable harm where the Freedom of Information Act required public access to "[o]fficial information that sheds light on an agency's performance of its statutory duties").

Plaintiffs have already been irreparably harmed because they were unable to monitor the process through which several counties began cancelling voters' registration based on citizenship.[9] Going forward, Plaintiffs' inability to investigate Texas's voter roll maintenance procedures effectively will grow as counties continue to cancel voters' registrations, including those of lawfully registered voters. Although cancellations of voters' registrations are temporarily paused due to a separate NVRA requirement, Texas's voter roll removals will resume on May 25, 2022.[10] As this date quickly approaches, Defendant Scott's delay in providing the Requested Records continues to reduce the amount of time that Plaintiffs have to monitor and investigate the procedures used to carry out Texas's New Voter Purge Program, causing irreparable harm. *See Brennan Ctr. for Justice at NYU Sch. of Law v. Dep't of Com.*, 498 F. Supp. 3d 87, 100–01 (D.D.C. 2020) (finding irreparable harm where "after a date certain, the value of the information sought by

---

[9] *Texas Secretary of State Releases Phase 1 Progress Report on Full Forensic Audit of 2020 General Election*, Tex. Sec'y of State (Dec. 31, 2021), https://www.sos.texas.gov/about/newsreleases/2021/123121.shtml ("[S]o far Dallas County has cancelled 1,193 potential non-U.S. citizen records.").

[10] 52 U.S.C. § 20507(c) of the NVRA requires that states complete their generalized programs to remove voters from the rolls not later than 90 days before a federal election. Texas just held primary elections, including for federal offices, on March 1, 2022, and the date of the Texas primary runoff election is May 24, 2022. *Important Election Dates 2021-2022*, Tex. Sec'y of State, https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml. Accordingly, removal efforts will recommence on May 25, 2022.

17

the [plaintiff organization] to inform the public about these matters would be materially lessened or lost").

Likewise, Plaintiffs' lack of access to the Requested Records implicates the irreparable harm to voters improperly removed from voter rolls, as the right to vote is a "fundamental constitutional right, the violation of which cannot be adequately remedied at law or after the violation occurred." *Mi Familia Vota*, 497 F. Supp. 3d at 219 (citing *Reynolds v. Sims*, 377 U.S. 533, 554 (1964)); *id.* ("Even the violation of fundamental constitutional rights for minimal periods of time 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *see also Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (mandating a finding of irreparable harm where a fundamental right is "either threatened or in fact being impaired"). Plaintiffs, as well as voters, will continue to be irreparably harmed unless Plaintiffs are provided sufficient time to examine the Requested Records before voter roll removals resume on May 25, 2022.

## III.    The Balance of Equities Weighs Heavily in Plaintiffs' Favor and a Preliminary Injunction Is Not Adverse to the Public Interest.

The harm to Plaintiffs' oversight ability absent the Requested Records outweighs the minimal burden on Defendant Scott associated with producing them. Since 1993, the NVRA has assigned states the burden of making voter roll information available for public inspection. *See Stringer v. Hughes*, No. SA-16-CV-257-OG, 2020 WL 6875182, at *29 (W.D. Tex. Aug. 28, 2020) (holding that the harm to voters "clearly outweighs the minimal burden that will be placed on Defendants by simply being ordered to comply with the NVRA, a federal law that has been in existence since 1993"). The passage of the NVRA indicates that "Congress intended States to shoulder the burden" of providing records. *Project Vote, Inc.*, 208 F. Supp. 3d at 1351. Any burden on Defendant Scott from producing the Requested Records was already contemplated by Congress

in passing the NVRA and is outweighed by the harm to Plaintiffs and voters resulting from a lack of transparency about the renewal of the likely flawed New Voter Purge Program.

Further, Plaintiffs' Record Requests are narrow and will not impose an undue burden on Defendant. Defendant has already compiled and provided the requested lists of voters to county election officials for further investigation, *see* Ex. H; Ex. K, and thus producing the exact same information to Plaintiffs will impose only a minimal burden. Indeed, the information requested by Plaintiffs is coextensive with the information that Defendant must have acquired, pursuant to the 2019 Settlement Agreement, in order to determine whether a registered voter matches with a DPS record indicating potential non-citizenship. *Compare* Ex. H and Ex. K *with* Ex. B.

Assessing the public interest in upholding federal law is similarly straightforward. Plaintiffs seek the Requested Records in furtherance of the public interest in "prevent[ing] any discriminatory imposition on [the] right to vote." *Mi Familia Vota*, 497 F. Supp. 3d at 222. Congress included the Public Disclosure Provision based on its belief that the public is best served by transparency in the maintenance of a state's voter rolls. Put plainly, there is a "great public interest in not removing names from state rolls in violation of federal law," *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 922 (6th Cir. 2018), that will be best served by remedying Defendant Scott's violation of the NVRA.

## IV.     This Court Should Advance Consideration of the Merits and Consolidate the Merits Hearing with the Preliminary Injunction Hearing.

So long as it provides the parties "clear and unambiguous notice" and "a full opportunity to present their respective cases," *Univ. of Texas*, 451 U.S. at 395, the Court "has broad discretion to advance the merits in order to consolidate them with the hearing on the motion for a preliminary injunction," *Dillon*, 512 F.2d 801. Plaintiffs respectfully request that the Court do so here.

"In a case in which the relevant facts are undisputed, exigent circumstances exist and the granting preliminary injunctive relief will effectively give a party all of the relief it would obtain after trial on the merits, consolidation of the hearing with trial on the merits under Rule 65(a)(2) is particularly appropriate." *Kickapoo Traditional Tribe of Tex. v. Chacon*, 46 F. Supp. 2d 644, 648-49 (W.D. Tex. 1999). All these factors are present here. The relevant facts—as established by the attached Record Requests from Plaintiffs and responses from Defendant—are straightforward and cannot be reasonably disputed. For the reasons described above, the records Plaintiffs have requested are time sensitive and should be disclosed immediately. Ultimately, upon release of the records, Plaintiffs will have obtained the relief they seek. Thus, this case is uniquely well suited to consolidation with the merits under Rule 65(a)(2).

## CONCLUSION

Because Defendant Scott's refusal to fulfill Plaintiffs' Record Requests violates federal law, Plaintiffs respectfully request that the Court enter an order advancing the merits and consolidating them with the preliminary injunction hearing. Plaintiffs further request that the Court enter a preliminary and/or permanent injunction ordering Defendant Scott to provide Plaintiffs with electronic copies of the Requested Records within ten (10) days of the Court's order and grant all such preliminary and permanent relief that this Court deems just and proper.

Dated: March 7, 2022

Respectfully submitted,

By: */s/ Danielle Lang*
Danielle Lang*
Alice Huling *
Molly Danahy*
Caleb Jackson*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005

T: (202) 736-2200
dlang@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org
cjackson@campaignlegalcenter.org
*Admitted pro hac vice*

Chad W. Dunn (TX Bar No. 24036507)
BRAZIL & DUNN, LLP
4407 Bee Caves Road, Suite 111
Austin, TX 78746
T: (512) 717-9822
F: (512) 515-9355
chad@brazilanddunn.com

*Counsel for Plaintiff Campaign Legal Center*

By: */s/ Thomas Buser-Clancy*
Thomas Buser-Clancy (TX Bar No. 24078344)
Andre Segura (TX Bar No. 24107112)
Ashley Harris (TX Bar No. 24123238)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS
5225 Katy Freeway, Suite 350
Houston, TX 77007
T: (713) 942-8146
F: (915) 642-6752
tbuser-clancy@aclutx.org
asegura@aclutx.org
aharris@aclutx.org

*Counsel for Plaintiff American Civil Liberties Union Foundation of Texas*

By: /s/ Nina Perales
Nina Perales (TX Bar No. 24005046)
Fatima Menendez (TX Bar No. 24090260)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
T: (210) 224-5476
F: (210) 224-5382
nperales@MALDEF.org
fmenendez@MALDEF.org

Rosa Saavedra Vanacore*
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
1016 16th Street, NW, Suite 100
Washington, DC 20036
T: (202) 293-2828
F: (202) 293-2849
rsaavedra@MALDEF.org
*Motion for pro hac vice forthcoming*

*Counsel for Plaintiff Mexican American Legal Defense and Educational Fund, Inc.*

By: */s/ Lindsey B. Cohan*
Lindsey B. Cohan (TX Bar No. 24083903)
DECHERT LLP
515 Congress Ave., Suite 1400
Austin, TX 78701
T: (512) 394-3000
lindsey.cohan@dechert.com

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
T: (212) 698-3822
neil.steiner@dechert.com
*Motion for pro hac vice forthcoming*

*Counsel for Plaintiffs Lawyers' Committee for Civil Rights Under Law and Dēmos: A Network for Ideas and Action, Ltd.*

| | |
|---|---|
| Ezra Rosenberg* | Brenda Wright* |
| Pooja Chaudhuri* | DĒMOS: A NETWORK FOR IDEAS AND |
| LAWYERS' COMMITTEE FOR CIVIL | ACTION, LTD. |
| RIGHTS UNDER LAW | 80 Broad Street, 4th Floor |
| 1500 K Street NW, Suite 900 | New York, NY 10004 |
| Washington, DC 20005 | bwright@demos.org |
| erosenberg@lawyerscommittee.org | *Motion for pro hac vice forthcoming* |
| pchaudhuri@lawyerscommittee.org | |
| *Motions for pro hac vice forthcoming* | *Counsel for Plaintiff Dēmos: A Network for Ideas and Action, Ltd.* |
| | |
| *Counsel for Plaintiff Lawyers' Committee for Civil Rights Under Law* | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day, I served all parties a true and correct copy of

**PLAINTIFFS' RULE 65 MOTION FOR PRELIMINARY INJUNCTION AND TO**

**CONSOLIDATE PRELIMINARY INJUNCTION HEARING WITH TRIAL ON THE**

**MERITS**, by filing the same with the clerk of court using the CM/ECF system, which will

automatically send email notification of such filing to all attorneys of record.

This 7th day of March, 2022.

By: */s/ Danielle Lang*
Danielle Lang*
Alice Huling *
Molly Danahy*
Caleb Jackson*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
T: (202) 736-2200
dlang@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org
cjackson@campaignlegalcenter.org
*Admitted pro hac vice*

*Counsel for Plaintiff Campaign Legal Center*
