**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CAMPAIGN LEGAL CENTER, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 1:22-cv-92-LY |
| | § | |
| JOHN SCOTT, in his official capacity as Texas Secretary of State, | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TO CONSOLIDATE HEARING WITH TRIAL ON THE MERITS**

## TABLE OF CONTENTS

Table of Contents ........ ii
Introduction ........ 1
Background ........ 1
Standard ........ 2
Argument ........ 3
I. The NVRA Does Not Require Public Disclosure of Sensitive, Privileged Information ........ 3
II. Declining to Transmit Documents Did Not Violate the NVRA ........ 8
III. Commandeering the Secretary Is Unconstitutional ........ 9
IV. Consolidation Is Appropriate ........ 12
Conclusion ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) .......... 11

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991) .......... 6

*Brackeen v. Haaland*,
994 F.3d 249 (5th Cir. 2021) (per curiam), *cert. granted* 142 S. Ct. 1204, 142 S. Ct. 1205 (2022) .......... 10

*Branch v. Smith*,
538 U.S. 254 (2003) .......... 10, 11

*Canal Auth. of State of Fla. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) .......... 2

*City of Boerne v. Flores*,
521 U.S. 507 (1997) .......... 12

*Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*,
140 S. Ct. 1009 (2020) .......... 6

*Day v. Johns Hopkins Health Sys. Corp.*,
907 F.3d 766 (4th Cir. 2018) (Wilkinson, J.) .......... 6

*Dellwood Farms, Inc. v. Cargill, Inc.*,
128 F.3d 1122 (7th Cir. 1997) (Posner, C.J.) .......... 7

*FBI v. Fazaga*,
142 S. Ct. 1051 (2022) .......... 6

*Friedman v. Bache Halsey Stuart Shields, Inc.*,
738 F.2d 1336 (D.C. Cir. 1984) .......... 7

*Halliburton, Inc. v. Admin. Rev. Bd.*,
771 F.3d 254 (5th Cir. 2014) (per curiam) .......... 6

*Hobson v. Moore*,
734 S.W.2d 340 (Tex. 1987) .......... 5

*Isbrandtsen Co. v. Johnson*,
343 U.S. 779 (1952) .......... 6

*Libertarian Party of Tex. v. Fainter*,
741 F.2d 728 (5th Cir. 1984) ........ 2

*Lien v. City of San Diego*,
No. 3:21-cv-224, 2022 WL 134896 (S.D. Cal. Jan. 14, 2022) ........ 5

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) (per curiam) ........ 3

*Murphy v. NCAA*,
138 S. Ct. 1461 (2018) ........ 9

*New York v. United States*,
505 U.S. 144 (1992) ........ 9

*Nichols v. Alcatel USA, Inc.*,
532 F.3d 364 (5th Cir. 2008) ........ 3

*Printz v. United States*,
521 U.S. 898 (1997) ........ 9, 12

*Project Vote, Inc. v. Kemp*,
208 F. Supp. 3d 1320 (N.D. Ga. 2016) ........ 3

*Pub. Int. Legal Found., Inc. v. N.C. Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) ........ 3, 4, 8

*Pub. Interest Legal Found. v. Boockvar*,
431 F. Supp. 3d 553 (M.D. Pa. 2019) ........ 8

*In re Sealed Case*,
856 F.2d 268 (D.C. Cir. 1988) ........ 5

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*,
823 F.2d 574 (D.C. Cir. 1987) (R.B. Ginsburg, J.) ........ 4

*Ex parte Siebold*,
100 U.S. 371 (1879) ........ 9

*Stern v. FBI*,
737 F.2d 84 (D.C. Cir. 1984) ........ 4

*Tuite v. Henry*,
181 F.R.D. 175 (D.D.C. 1998), *aff'd* 203 F.3d 53 (D.C. Cir. 1999) ........ 5

*In re U.S. DHS*,
459 F.3d 565 (5th Cir. 2006) ........ 5

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995)....................11

*United States v. Danovaro*,
877 F.2d 583 (7th Cir. 1989) (Easterbrook, J.) ....................6, 7

*United States v. Lockheed Martin Corp.*,
No. 1:09-cv-324, 2011 WL 13228302 (S.D. Miss. Jan. 11, 2011)....................5

*Upjohn Co. v. United States*,
449 U.S. 383 (1981)....................6, 7

*Wheeler v. Gabbay*,
40 Va. Cir. 551, 1994 WL 1031214 (Va. Cir. June 10, 1994) ....................5

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ....................3

**Constitutional Provisions**

U.S. Const. Amendment XIV, § 5....................12

U.S. Const. Article I, § 4 ....................11

**Statutes**

18 U.S.C. § 2721(a)(1)....................7

18 U.S.C. § 2721(b)(1) ....................7

18 U.S.C. § 2721(c) ....................7

25 U.S.C. § 1915....................10

52 U.S.C. § 20501(a) ....................12

52 U.S.C. § 20507(i)(1) .................... 9, 10, 12

52 U.S.C. § 20510(b)....................9

N.C. Gen. Stat. §§ 163-54, 55(a) ....................4

N.C. Gen. Stat. § 163-275(1) ....................4

Tex. Elec. Code § 13.001(a)(2)....................1, 4

Tex. Elec. Code § 13.007(a)....................1, 4

Tex. Elec. Code § 16.033 ....................2

Tex. Elec. Code § 16.0332(a) .......... 2

Tex. Elec. Code § 16.0332(a-1) .......... 2

Tex. Elec. Code § 16.0332(c) .......... 2

Tex. Elec. Code § 31.006(a) .......... 2

Tex. Elec. Code § 31.006(b) .......... 2

Tex. Elec. Code § 64.012 .......... 1

Tex. Transp. Code § 730.004 .......... 7

Tex. Transp. Code § 730.005(9) .......... 7

**Court Rules**

Federal Rule of Civil Procedure 65(a)(2) .......... 3, 12

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) .......... 6

## INTRODUCTION

Plaintiffs' claim under the National Voter Registration Act ("NVRA") is akin to a discovery dispute. They have demanded that the Texas Secretary of State send them electronic copies of certain records relating to voter registration, but the NVRA does not require the Secretary to comply with that demand. First, the NVRA does not compel public disclosure of sensitive information related to ongoing law-enforcement investigations. Second, even when the NVRA requires information to be made public, it demands only that the information be available for public inspection and, sometimes, photocopying. It does not require the Secretary to transfer electronic copies of documents to Plaintiffs, as they demanded. Third, the NVRA cannot constitutionally compel the Secretary to maintain and make public the requested records. The anticommandeering doctrine prevents Congress from involuntarily enlisting state officials in the enforcement of federal law.

The Court should consolidate the preliminary injunction hearing with a trial on the merits and enter judgment in favor of the Secretary. Alternatively, the Court should deny Plaintiffs' motion for a preliminary injunction.

## BACKGROUND

Invoking the NVRA's public-disclosure provision, Plaintiffs sought two "list[s] of all . . . registrants [the Secretary of State's] office identified as potential non-U.S. citizens." ECF 20-10 at 3; ECF 20-13 at 3. Those lists consist of people identified as having potentially registered to vote in violation of Texas Election Code § 13.001(a)(2), which makes United States citizenship an eligibility requirement. The individuals on those lists may have committed criminal offenses, including making a false statement on a voter-registration application, *see* Tex. Elec. Code § 13.007(a), or voting despite being ineligible, *id.* § 64.012. Of course, whether particular individuals have committed a criminal offense depends not only on whether they are, in fact, non-citizens but also on their *mens rea*. *See id.* §§ 13.007(a), 64.012.

The Secretary of State's office compiles the requested lists as part of an investigatory process authorized by statute. First, "information in the existing statewide computerized voter registration list is compared against information in the database of the Department of Public Safety on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications." Tex. Elec. Code § 16.0332(a-1); *see* Ex. A ¶ 3. The Secretary of State's office sends relevant results to local voter registrars, who then "deliver to each registered voter whose name appears on the list a written notice requiring the voter to submit to the registrar proof of United States citizenship." Tex. Elec. Code § 16.0332(a); *see* Ex. A ¶¶ 3–5. This process can lead to cancellation of voter registrations, but any cancellation is conducted by local officials only after their own review. *See* Tex. Elec. Code §§ 16.033, 16.0332(c); *see* Ex. A ¶¶ 6–8.

Depending on the relevant facts relating to the individual registrants, the Secretary of State's office may "receiv[e] or discover[] information indicating that criminal conduct in connection with an election has occurred." Tex. Elec. Code § 31.006(a); *see* Ex. A ¶ 11. If "the secretary of state determines that there is reasonable cause to suspect that criminal conduct occurred," then he "refer[s] the information to the attorney general." *Id.* Texas law treats that information as confidential so long as an investigation is pending. *See id.* § 31.006(b).

## STANDARD

A motion for a preliminary injunction must satisfy four "prerequisites":

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Libertarian Party of Tex. v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984).

"The burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

That burden is heavy. It requires "*a clear showing*." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (quotation omitted). It is "never awarded as of right" and is instead left to a district court's "sound discretion." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

In this case, however, Plaintiffs have sought (and Defendant does not oppose) consolidation under Federal Rule of Civil Procedure 65(a)(2). Thus, the Court should apply the ordinary standards for a civil trial, including finding facts by preponderance of the evidence.

## ARGUMENT

Plaintiffs' claim fails for three reasons. First, the Secretary is not obligated to publicly disclose confidential, privileged information regarding pending law-enforcement investigations, especially when the information threatens the privacy interests of the individuals involved. Second, the Secretary is not obligated to electronically transmit documents to Plaintiffs, which is the only form of disclosure Plaintiffs requested. Third, to the extent the NVRA imposes these duties on the Secretary, it violates the anticommandeering doctrine and is therefore unconstitutional.

### I. The NVRA Does Not Require Public Disclosure of Sensitive, Privileged Information

Plaintiffs seek only sensitive records relating to persons who may be subject to ongoing civil or criminal investigations. *See* ECF 20-10 at 3; ECF 20-13 at 3. But the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016).

As the Fourth Circuit recently explained, the NVRA does not "require automatic disclosure of all categories of documents." *Pub. Int. Legal Found., Inc. v. N.C. Bd. of Elections*, 996 F.3d 257, 266 (4th Cir. 2021). In that case, the plaintiffs' request "necessarily implicate[d] individuals who may have

been or are currently under investigation for committing serious criminal offenses under state and federal law for registering to vote or for voting in an election as a noncitizen." *Id.* The court recognized that the disclosure of related information would not only interfere with the investigations but also "unwarrantedly" associate an individual "with alleged criminal activity." *Id.* at 267 (quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984)). To accommodate those concerns, including the risk of "subjecting [identified individuals] to potential embarrassment or harassment," the Fourth Circuit instructed the district court to exclude from disclosure the "identities and personal information of those subject to criminal investigations" and those identified as "'potentially' failing to satisfy the citizenship requirement but [who] later were exonerated." *Id.*[1]

The problem with Plaintiffs' request in this case is that it asks for just the sort of information the Fourth Circuit held should not be disclosed. Plaintiffs requested two lists, both of which consist exclusively of "registrants [the Secretary of State's] office identified as potential non-U.S. citizens." ECF 20-10 at 3; ECF 20-13 at 3. The individuals on the list are part of SOS's ongoing review into whether to refer matters to the Attorney General. *See* Ex. A ¶ 12. The Texas laws at issue here are nearly identical to the North Carolina laws at issue in *Public Interest Legal Foundation*. *See Pub. Int. Legal Found.*, 996 F.3d at 259, 261, 266–67 (discussing the North Carolina statutes); *compare* N.C. Gen. Stat. §§ 163-54, 55(a) (requiring United States citizenship for registration and voting), *with* Tex. Elec. Code § 13.001(a)(2) (same); *compare* N.C. Gen. Stat. § 163-275(1) (criminalizing as a felony offense fraudulent voter registration), *with* Tex. Elec. Code § 13.007(a) (same).

The Fourth Circuit's approach is especially compelling in light of the investigative privilege that protects information regarding law-enforcement investigations from public disclosure. Federal

1 The Fourth Circuit's application of the NVRA accords with precedent applying the Freedom of Information Act. Under that analogous statute, courts recognize that "[t]here is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987) (R.B. Ginsburg, J.).

courts recognize the investigative privilege as a matter of common law, just as Texas courts "recognize [a] privilege in civil litigation for law enforcement investigation" under state law. *Hobson v. Moore*, 734 S.W.2d 340, 341 (Tex. 1987).

The Fifth Circuit has held that the privilege "protect[s] government documents relating to an ongoing criminal investigation," *In re U.S. DHS*, 459 F.3d 565, 569 n.2 (5th Cir. 2006), but other courts have ruled that it is not limited to the criminal context. "The law enforcement privilege protects civil as well as criminal investigations." *United States v. Lockheed Martin Corp.*, No. 1:09-cv-324, 2011 WL 13228302, at *4 (S.D. Miss. Jan. 11, 2011); *accord In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) ("civil and criminal investigations").

The privilege serves numerous important interests, including "prevent[ing] interference with investigations" and "safeguard[ing] the privacy of individuals under investigation." *Tuite v. Henry*, 181 F.R.D. 175, 176–77 (D.D.C. 1998), *aff'd* 203 F.3d 53 (D.C. Cir. 1999), *quoted in In re U.S. DHS*, 459 F.3d at 569 n.1. It thus allows government officials to decline to identify those suspected of violating the law. *See, e.g.*, *Lien v. City of San Diego*, No. 3:21-cv-224, 2022 WL 134896, at *3 (S.D. Cal. Jan. 14, 2022) (approving "application of the law enforcement investigatory privilege to the identity of the suspect").

Disclosing the identity of a suspect can harm not only the investigation but also the suspect himself. Courts applying the investigative privilege act to safeguard law-enforcement processes, but they also recognize that "disclosure of the identity of suspects in discovery may cause irreparable harm to a citizen, who is not charged with an offense, and indeed, may never be charged for a violation of the law." *Wheeler v. Gabbay*, 40 Va. Cir. 551, 1994 WL 1031214, at *4 (Va. Cir. June 10, 1994).

Despite the fact that the lists Plaintiffs request are part of an ongoing investigation, Plaintiffs do not address the investigative privilege in their motion. They seem to assume that the NVRA requires SOS to disclose privileged information, but the NVRA says nothing about privileges.

"Statutes requiring disclosure, but silent on the question of privilege, do not override customary privileges." *United States v. Danovaro*, 877 F.2d 583, 588 (7th Cir. 1989) (Easterbrook, J.). That is why everyone agrees "that the work-product doctrine does apply to IRS summonses" authorized under a broadly worded statute that does not mention privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981) (noting that the government "wisely" conceded the point); *see also Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 775–76 (4th Cir. 2018) (Wilkinson, J.) (holding RICO did not displace the witness litigation privilege because "common law immunities function as implied limits on congressional statutes, operative until they are expressly removed").

The Supreme Court reaffirmed this principle just last month. It held that "the [state secrets] privilege should not be held to have been abrogated or limited unless Congress has at least used clear statutory language." *FBI v. Fazaga*, 142 S. Ct. 1051, 1060–61 (2022). "The absence of any statutory reference to the state secrets privilege [in the Foreign Intelligence Surveillance Act] is strong evidence that the availability of the privilege was not altered in any way." *Id.* at 1060.

So too here. The NVRA is silent on privileges, so it preserves common-law privileges, including the investigative privilege. A contrary ruling would risk the release of core privileged material, including attorney-client communications, in future NVRA disputes. Interpreting statutes to *sub silentio* abrogate such privileges would contradict the principle that "Congress legislates against the backdrop of the common law." *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1016 (2020). "[W]here a common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.'" *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991)) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)). For this reason, "a statute will be construed to alter the common law only when that disposition is clear." Antonin Scalia & Bryan A. Garner, *Reading Law* 318 (2012) (Presumption Against Change in Common Law); *see, e.g.*, *Halliburton, Inc. v.*

*Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (per curiam) (interpreting a federal statute to be consistent with the "common-law background").

Courts are often more accustomed to applying privileges in the context of discovery disputes during litigation, but privileges are no less applicable when someone demands records under a federal statute. *See, e.g.*, *Upjohn*, 449 U.S. at 397; *Danovaro*, 877 F.2d at 588. On the contrary, the investigative privilege provides *more* protection against statutory disclosures to the public at large than against discovery in ordinary litigation. "[S]ensitive information" that cannot be "broadcast[] . . . to the general populace" might be available through "court-supervised discovery" that makes "judicious use of protective orders." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343–44 (D.C. Cir. 1984). Even in the discovery context, however, "there ought to be a pretty strong presumption against lifting the [investigative] privilege." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997) (Posner, C.J.). Here, by contrast, a confidentiality order is not a feasible solution because, if Plaintiffs have a statutory right to the lists, then virtually everyone else does too. Given the wider disclosure inherent in NVRA cases, the investigative privilege should apply with special force.

Moreover, the Driver's Privacy Protection Act also prevents the public disclosure of the information Plaintiffs request. That statute, which was enacted subsequent to the NVRA, generally prohibits the disclosure of "personal information . . . about any individual obtained by [a state] department [of motor vehicles] in connection with a motor vehicle record." 18 U.S.C. § 2721(a)(1); *see also id.* § 2721(c). It has an exception for disclosure "[f]or use by any government agency . . . in carrying out its functions," *id.* § 2721(b)(1), but it does not contain an exception for Plaintiffs.[2]

Plaintiffs' request implicates the Driver's Privacy Protection Act because it is defined by citizenship information that the Department of Public Safety collected when the relevant individuals

[2] State-law provides similar privacy protections in the Motor Vehicle Records Disclosure Act. *See* Tex. Transp. Code § 730.004. It also allows disclosure to the Secretary of State for purposes of "voter registration or the administration of elections," *id.* § 730.005(9), but it does not authorize disclosure to Plaintiffs.

"were issued a new or renewed driver license or personal identification card." Ex. A ¶ 3; *see Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 563 (M.D. Pa. 2019) (rejecting an argument "that citizenship status is not protected information" "[a]t this stage of the litigation"). The requirements of the Driver's Privacy Protection Act are sufficient to displace any obligation that the NVRA might otherwise impose on the Secretary of State's office. *See Public Interest Legal Found.*, 996 F.3d at 259 ("excluding from disclosure" under the NVRA "information precluded from disclosure by . . . the Driver's Privacy Protection Act of 1994").

Plaintiffs' suggestion that privacy concerns can justify "some redactions" but not withholding documents is inconsistent with the very case they are describing. ECF 20 at 12 n.6. In *Public Interest Legal Foundation*, the Fourth Circuit "agree[d] with the district court that any disclosure of sensitive documents such as birth certificates and passports would present similar concerns as the sharing of social security numbers." 996 F.3d at 268 n.9.

To be sure, in most cases, privacy and privilege issues can be resolved through redaction, but in this case—where the scope of Plaintiffs' request is defined by the pendency of a law-enforcement investigation—the NVRA does not compel disclosure of the documents requested. *Public Interest Legal Foundation*, for example, contemplated redaction, rather than withholding, of certain documents because the sensitive records constituted only a subset of the plaintiffs' total request. *See* 996 F.3d at 267–68. In this case, however, redaction would be futile because Plaintiffs limited their request to sensitive records, namely the "list[s] of all . . . registrants [the Secretary of State's] office identified as potential non-U.S. citizens." ECF 20-10 at 3; ECF 20-13 at 3. To redact the identifies and personal information of persons suspected of registering to vote despite being a noncitizen would be to redact the very information that Plaintiffs seek. Non-disclosure is therefore appropriate. *See* Ex. A ¶ 16.

## II. Declining to Transmit Documents Did Not Violate the NVRA

The NVRA does not authorize private suits unless the defendant has already violated its

provisions and received certain notices from the plaintiff. *See* 52 U.S.C. § 20510(b). Here, however, the Secretary of State has not violated the NVRA, both for the reasons explained above and because the NVRA does not require the electronic transmission of documents.

The NVRA requires that certain records be "ma[d]e available for public inspection and, where available, photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1). But Plaintiffs did not seek inspection or photocopying. Instead, Plaintiffs requested that documents be transmitted "electronically by email . . . or FTP transfer if available." ECF 20-10 at 3; ECF 20-13 at 3. The NVRA does not entitle anyone to the electronic transmission of records. For this additional reason, Defendant's refusal to comply with Plaintiffs' request was not a violation of the NVRA.

## III. Commandeering the Secretary Is Unconstitutional

Plaintiffs contend that the NVRA imposes affirmative obligations on the Secretary regarding the preservation and disclosure of certain records, but that would violate the anticommandeering doctrine. "The anticommandeering doctrine . . . is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. NCAA*, 138 S. Ct. 1461, 1475 (2018). That general rule includes a specific prohibition on Congress "conscripting [a] State's officers." *Printz v. United States*, 521 U.S. 898, 935 (1997).

When the federal government wants state officials to enforce federal law, it can attempt to persuade them to voluntarily take up that task by offering additional funding or threatening to preempt state regulations. *See New York v. United States*, 505 U.S. 144, 166–68 (1992). Alternatively, the federal government can use its own officers to enforce federal law, as Congress has done in the past. *See Ex parte Siebold*, 100 U.S. 371, 386 (1879) (discussing "officers appointed by the State and national governments for superintending the election" and referring to the latter as "officers of the United States"). But the NVRA's public-disclosure provision does not rest on any of these constitutional

options. Instead, it flatly orders that a "State shall maintain . . . and shall make available" certain records, 52 U.S.C. § 20507(i)(1). That is an unconstitutional violation of the anticommandeering doctrine.

The *en banc* Fifth Circuit recently held that a similar "recordkeeping requirements" in the Indian Child Welfare Act ("ICWA") "unconstitutionally commandeer state actors." *Brackeen v. Haaland*, 994 F.3d 249, 268 (5th Cir. 2021) (per curiam), *cert. granted* 142 S. Ct. 1204, 142 S. Ct. 1205 (2022). ICWA provides that certain records "shall be maintained by the State" and "shall be made available at any time upon the request of the Secretary or the Indian child's tribe." 25 U.S.C. § 1915. The NVRA similarly provides that "[e]ach State shall maintain . . . and shall make available for public inspection" certain records. 52 U.S.C. § 20507(i)(1). It is similarly unconstitutional.

Some justices have suggested that the Times, Places and Manner Clause can complicate the application of the anticommandeering doctrine, but that potential complication does not apply here. Their theory is that the Times, Places and Manner Clause itself imposes an affirmative "obligation to prescribe the 'Times, Places and Manner' of holding congressional elections." *Branch v. Smith*, 538 U.S. 254, 280 (2003) (plurality op.). When a State commits a "constitutional violation" by "fail[ing] to provide for the election of the proper number of Representatives," a federal court "crafting its remedy" could "follow[] the 'Regulations' Congress prescribed" under its Times, Places and Manner Clause authority. *Id.* But even this theory does not approve commandeering state officials through a "mere statutory requirement." *Id.*[3]

In this case, however, commandeering is accomplished by the NVRA's public-disclosure provision, a "mere statutory requirement," not the Times, Places and Manner Clause itself. That is

[3] A majority of the Court declined to join the relevant part of the *Branch* opinion. *See id.* at 285 (Stevens, J., joined by Souter and Breyer, JJ., concurring in part and concurring in the judgment) ("I do not join Parts III-B or IV."); *id.* at 292 (O'Connor, J., joined by Thomas, J., concurring in part and dissenting in part) ("I cannot join Part III or Part IV.").

why Plaintiffs' only claim is for an alleged statutory violation, not a constitutional violation. *See* ECF 1 at 14. Because Plaintiffs do not allege Texas has defaulted on any obligations under the Times, Places and Manner Clause, they cannot rely on *Branch*.

Alternatively, even if the Times, Places and Manner Clause authorized Congress to commandeer state officials (it does not), it would not help Plaintiffs here. That clause cannot support the NVRA's public-disclosure provision because mandating public disclosure is not a regulation of the time, place, or manner of holding an election.

The constitutional text provides, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, § 4. In the founding era, the relevant definition of "Manner" was "method."[4] The word "manner" was used interchangeably with "mode."[5] The Framers understood it as referring to the *procedures* for holding an election, such as "[w]hether the electors should vote by ballot or vivâ voce" and whether they "sh[oul]d all vote for all the representatives; or all in a district vote for a number allotted to the district." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833 (1995) (quoting James Madison's remarks during the constitutional convention). "[T]he power over the manner only enables them to determine *how* these electors shall elect—whether by ballot, or by vote, or by any other way." *Id.* (quoting statement from the North Carolina ratifying convention).

More recent precedent has treated congressional power over the "Manner of holding Elections" as encompassing a power over "regulations relating to registration." *Arizona v. Inter Tribal*

---

4 *See* Samuel Johnson, *A Dictionary of the English Language* (1773), available at https://johnsonsdictionaryonline.com/1755/manner_ns (first definition: "Form; method"); Noah Webster, *American Dictionary of the English Language* (1828), available at https://webstersdictionary1828.com/Dictionary/manner (first definition: "Form; method; way of performing or executing").

5 Letter from Timothy Pickering to Charles Tillinghast (Dec. 24, 1787) in 2 *The Founders' Constitution* 252 (Philip B. Kurland & Ralph Lerner eds., 1987) (art. I, § 4, cl. 1, Doc. 7), available at https://press-pubs.uchicago.edu/founders/documents/a1_4_1s7.html.

*Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (internal quotation marks omitted). But the NVRA's public-disclosure provision is not a regulation of registration. It does not govern who may register, nor does it specify when, where, or how registration is accomplished. And it does not control any part of the process for electing members of Congress. Instead, it simply orders state officials to maintain certain records related to voter registration and to disclose those records to the public (at least in some instances). *See* 52 U.S.C. § 20507(i)(1).

Seemingly conceding that the public-disclosure provision does not itself regulate registration, Plaintiffs allege that it was passed "[i]n order to enforce compliance with" the NVRA's substantive regulations regarding registration. ECF 1 ¶ 3. But Plaintiffs cannot rely on the Necessary and Proper Clause because that clause does not empower Congress to commandeer state officials. *See Printz*, 521 U.S. at 923–24. Plaintiffs also cannot rely on Section 5 of the Fourteenth Amendment because that clause does not authorize commandeering either, *see* U.S. Const. amend. XIV, § 5 (authorizing Congress "to enforce, by appropriate legislation"), and because the public-disclosure provision lacks the required "congruence and proportionality." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997). The legislative findings underlying the NVRA do not support the conclusion that the public-disclosure provision, which requires maintenance and disclosure of a wide swath of records for two years, is congruent and proportional to any likelihood of potential constitutional violations regarding registration. *See id.*; 52 U.S.C. § 20501(a).

## IV. Consolidation Is Appropriate

Plaintiffs ask the Court to "advance the trial on the merits and consolidate it with the [preliminary injunction] hearing." Fed. R. Civ. P. 65(a)(2). Defendant agrees that consolidation is appropriate. There is no need for a pre-trial preliminary injunction in this case. Plaintiffs argue that they are concerned about potential "voter roll removals," but they also explain that such removals cannot resume before May 25, 2022. ECF 20 at 17.

## CONCLUSION

Defendant respectfully requests that the Court enter judgment in his favor after trial or, if the Court does not consolidate, deny Plaintiffs' motion for a preliminary injunction.

Date: April 4, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

JEFFREY M. WHITE
Special Counsel
jeff.white@oag.texas.gov
Tex. State Bar No. 24064380

J. AARON BARNES
Special Counsel
aaron.barnes@oag.texas.gov
Tex. State Bar No. 24099014

JACK B. DISORBO
Assistant Attorney General
jack.disorbo@oag.texas.gov
Tex. State Bar No. 24120804

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 4, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN