IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CAMPAIGN LEGAL CENTER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOHN SCOTT, in his official capacity as Texas Secretary of State,<br><br>*Defendant*. | Case No. 1:22-cv-92-LY |

**DEFENDANT'S OPPOSED MOTION FOR STAY PENDING APPEAL**

**INTRODUCTION**

On August 2, 2022, the Court entered an injunction requiring Secretary Scott to disclose certain confidential information by August 16, 2022. *See* ECF 56. Defendant has appealed, *see* ECF 57, and now respectfully moves for a stay pending that appeal.

Absent a stay, Defendant will be effectively deprived of his right to appeal. If Defendant is forced to disclose confidential information—information he believes may well lead to voters being harassed—on August 16, then even an eventual victory on appeal would not "unring" that bell.

At trial, Defendant sought, in the alternative, a stay of any injunction the Court decided to issue. *See* Tr. 44–46. The Court acknowledged that the stay issue was before it, *see id.* at 46, but did not grant a stay of its injunction, *see generally* ECF 56. Defendant interprets the Court's ruling as an implicit denial of its oral motion for a stay, but because the Court's order did not expressly address the stay issue, Defendant submits this written motion to err on the side of caution. *See* Fed. R. App. P. 8(a).

In light of the impending deadline for compliance with this Court's injunction, and a desire to provide the Fifth Circuit with adequate time to consider this issue, Defendant intends to file a motion for a stay pending appeal in the Fifth Circuit on Monday afternoon. *See* Fifth Cir. R. 27.3 (setting a 2:00 p.m. deadline).

**STANDARD**

The Court ordinarily considers four factors in determining whether to exercise its "inherent" power to stay the effect of an order pending appeal: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm in the absence of a stay; (3) whether the opposing party will be substantially injured by a stay; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009). But where the "balance of equities weigh[] *heavily* in favor of granting the stay" then only a "*serious legal question*" is required. *Tex. Dem. Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020).

**ARGUMENT**

**I.   Defendant is Likely to Succeed on Appeal**

Defendant is likely to succeed on appeal. Rather than burden the Court with duplicative briefing, Defendant incorporates by reference the arguments he raised in his previous briefing and at trial. *See* ECF 24; Tr. 23–46. Defendant reiterates only one argument here—Plaintiffs' lack of standing—because Defendant's previous briefing was submitted before the lack of evidence to show standing was clear.

This Court correctly concluded that Plaintiffs bore the burden to demonstrate standing. *See* ECF 55 at 6. "Because this case was tried, Plaintiffs needed to prove standing by a preponderance of the evidence." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 367 (5th Cir. 2020); *see also Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 n.31 (5th Cir. 2005).

The Court also correctly concluded that, because this is an informational injury case, Plaintiffs were required to show "downstream consequences" from the alleged lack of information. *See* ECF 55 at 7 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021)).

Plaintiffs presented no evidence of downstream consequences. Plaintiffs did not call any witnesses at trial. Indeed, they opposed having an evidentiary hearing with live witnesses. As the parties and the Court both acknowledged, the trial evidence was limited to exhibits attached to the preliminary-injunction briefing. *See* Tr. 4–5; ECF 35. Those exhibits did not include any declarations from Plaintiffs, much less declarations establishing downstream consequences that could qualify as an injury in fact. *Cf.* ECF 20-1 (lawyer declaration authenticating documentary exhibits as "true and correct" copies); ECF 20-2 (same); ECF 34-1 (same).

Defendant raised this evidentiary deficiency at trial. *See* Tr. 25–27. Plaintiffs' response during their rebuttal argument did not establish standing.

First, Plaintiffs argued that they "are seeking information that [they] have a right to." Tr. 46. But an alleged statutory right to information (a right Defendant contests in this case, *see* ECF 24 at 3–12) does not create standing. Plaintiffs' position ignores the "important difference . . . between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion*, 141 S. Ct. at 2205. Demonstrating an alleged violation of law is not sufficient because "an injury in law is not an injury in fact." *Id.* That is why *TransUnion* held that plaintiffs claiming informational injury must demonstrate "'downstream consequences' from failing to receive the required information." *Id.* at 2214.

Second, Plaintiffs argued "that there is downstream injury with respect to the public not having visibility into how Texas is keeping its voter lists." Tr. 46. Again, however, there is no record evidence regarding anyone "not having visibility." No individual or entity has claimed to lack "visibility" in any testimony or declaration. If anything, the limited record evidence on this point suggests that Plaintiffs already have access to at least some of the information they are seeking. *See* ECF 55 at 10 (noting Plaintiff obtained some information from county sources); *id.* at 6 n.3.

Moreover, lacking "visibility" is not an injury in fact. Claiming to lack "visibility" is just another way of saying that one lacks the information one is seeking. It does not establish that there are any concrete "downstream consequences" from not having the information. *TransUnion*, 141 S. Ct. at 2214. Also, Plaintiffs' argument that "the public" lacks "visibility" highlights that, even if it had evidence on this point, it would demonstrate no more than a generalized grievance insufficient for Article III standing. "Plaintiff-specific evidence is needed before Plaintiffs' claims can be properly characterized as an attempt to remedy an imminent injury to Plaintiffs instead of a generalized grievance available to all Texans." *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019). Finally, even if Plaintiffs did have evidence of particular third parties facing injuries in fact, they would not be able to

sue on behalf of those third parties. Plaintiffs do not claim to satisfy the Supreme Court's test for third-party standing, *see Vote.Org v. Callanen*, 39 F.4th 297, 303–04 (5th Cir. 2022), and the statute they invoke does not authorize suits on behalf of third parties, *see id.* at 304–05 (explaining that Section 1983 suits are limited to "the party injured"); 52 U.S.C. § 20510(b)(2) (authorizing "the aggrieved person," not third parties, to "bring a civil action").

Third, Plaintiffs argued "that there is downstream injury with respect to the public not having visibility into . . . properly registered Texans being discriminated against and burdened in their right to vote." Tr. 46. There is no record evidence that anyone lacks "visibility," that anyone is being discriminated against, or that anyone is being burdened. No one testified to any such injuries, much less that such injuries were downstream consequences of an alleged violation of the NVRA's public-disclosure provision. Even if there were such evidence, it would raise the same problems discussed above: lacking "visibility" is not a concrete injury, and Plaintiffs cannot sue over alleged violations of third-parties' voting rights.

In short, Plaintiffs never affirmatively addressed standing, even though they bore the burden on that point. In their rebuttal time, Plaintiffs argued three theories of standing, but they failed to specifically identify any piece of record evidence supporting any of those theories. *See* Tr. 46. It is now too late for them to identify new evidence or new theories of standing. "Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533. 542 (5th Cir. 2019); *accord E.T. v. Paxton*, 2022 WL 2914732, at *5 n.2 (5th Cir. July 25, 2022) (opinion of Oldham, J.).

In its recent opinion, the Court concluded that Plaintiffs "demonstrate[d] that the Secretary's refusal to disclose the Records has resulted in adverse 'downstream consequences,' including the lack of opportunity for Plaintiffs to identify eligible voters improperly flagged in the database." ECF 55 at 7. Defendant respectfully suggests that this conclusion is supported only by attorney argument, *see* Tr.

46, not evidence in the record. In any event, just as an artificial entity lacking the right to vote cannot bring a Section 1983 suit based on the voting rights of third parties because the artificial entity is not "the party injured," *see Vote.Org*, 39 F.4th at 303–05 (5th Cir. 2022), the artificial entity plaintiffs in this case cannot bring an NVRA suit based on the voting rights of third parties because the artificial entities are not "the aggrieved person." 52 U.S.C. § 20510(b)(2).

## II. Defendant Faces Irreparable Harm Absent a Stay

The Court entered a mandatory injunction requiring the Secretary to take a discrete act: disclose confidential information. *See* ECF 56. Defendant has "concerns that publicly releasing the requested information could subject at least some of the identified individuals to possible harassment or unwanted attention by other individuals and groups." ECF 24-1 ¶ 15. Moreover, releasing the information "could inhibit the SOS's ability to conduct a frank, comprehensive evaluation of the matter and, in certain instances, could discourage individuals from submitting election complaints to the SOS." *Id.* ¶ 14. Plaintiffs did not seek to cross-examine the declarant who presented these concerns, nor did they present evidence that the concerns were unfounded.

These concerns justify a stay pending appeal because, once the information has "been released," "the cat is out of the bag." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (Kavanaugh, J.). Absent a stay, an eventual victory on appeal would likely come too late to prevent such harm.

## III. Plaintiffs Face No Harm, and the Public Interest Favors a Stay

The remaining factors also support granting a stay pending appeal. As discussed above, Plaintiffs presented no evidence of any injury at all, much less substantial injury that would result from a stay. The public interest favors protecting the investigative process and the privacy rights of individuals subject to investigation. *See* ECF 24 at 3–8.

6

**CONCLUSION**

Defendant respectfully requests that the Court stay its injunction pending appeal.

| | |
|---|---|
| Date: August 5, 2022 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ Patrick K. Sweeten<br>PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov |

**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF CONFERENCE**

I certify that counsel for Defendant conferred with counsel for Plaintiffs about the foregoing motion on August 4 and August 5, 2022. Counsel for Plaintiffs stated that their clients oppose the motion for stay pending appeal.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 5, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN